UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

LEONARD L. ADKINS,                )
                                  )
        Plaintiff,                )
                                  )
v.                                )   No. 3:10-CV-274
                                  )   (PHILLIPS/GUYTON)
MICHAEL J. ASTRUE,                )
Commissioner of Social Security,  )
                                  )
        Defendant.                )

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 12 and 13] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 16 and 17]. Plaintiff Leonard L. Adkins seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On December 12, 2007, the Plaintiff filed an application for disability insurance benefits and supplemental security income, claiming a period of disability which began November 15, 2007. [Tr. 133]. After his application was denied initially and also denied upon reconsideration, the Plaintiff requested a hearing. On August 26, 2009, a hearing was held before an ALJ to review determination of Plaintiff's claim. [Tr. 53-79]. On November 30, 2009, the ALJ found that the Plaintiff was not disabled. The Appeals Council denied the Plaintiff's request for review; thus, the decision of the

ALJ became the final decision of the Commissioner. The Plaintiff now seeks judicial review of the Commissioner's decision.

I. ALJ FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2013.

2. The claimant has not engaged in substantial gainful activity since November 15, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease resulting in low back pain, a right hand injury, and situational depression (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), which includes lifting up to 20 pounds occasionally and up to 10 pounds frequently. The claimant can sit for up to 6 hours in an 8-hour workday and stand and walk for more than 30 minutes continuously without being able to take at least a brief break. Additionally, the claimant can occasionally stoop, balance, crouch, crawl, kneel, and climb ramps and stairs. However, the claimant should not climb ropes, ladders, or scaffolds. The claimant should not have concentrated exposure to vibration. The claimant can frequently (up to 2/3 of the workday) handle or finger with his right hand. Finally, the claimant can perform one or two step tasks and low level detailed tasks.

6. The claimant is unable to perform any past relevant work (20 CFR 404.15.65 and 416.965).

> 7. The claimant was born on June 24, 1969 and was 38 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).
>
> 8. The claimant has limited education and is able to communication in English (20 CFR 404.1564 and 416.964).
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from November 15, 2007 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 38-47].

## II.  DISABILITY ELIGIBILITY

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act.  42 U.S.C. § 1382(a); 20 C.F.R. § 416.202.  An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability.  See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  An individual shall be determined to be under a disability only if his

physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

4

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached

5

through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See id. at 547.

On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV. ANALYSIS

On appeal, Plaintiff argues that the ALJ's disability determination is not supported by substantial evidence. The Plaintiff contends the ALJ erred by: (A) not affording the proper weight to the opinions of J. Craig Rylands, M.D., (B) not procuring a mental health expert to evaluate the Plaintiff's mental limitations, and (C) not properly evaluating and crediting the Plaintiff's subjective allegations of pain. [Doc. 13 at 5].

The Commissioner, in response, argues that the ALJ gave good reasons for rejecting Dr. Rylands's opinion. [Doc. 17 at 10]. The Commissioner maintains that Plaintiff has not asserted that

6

he has more significant mental impairments than those found by the ALJ, and he has not produced evidence of mental impairment sufficient to require the ALJ to order an evaluation by a mental health professional. [Doc. 17 at 12-13]. Finally, the Commissioner responds that the ALJ's credibility determination is not incomplete and is instead well-supported by references to the record. [Doc. 17 at 13-14].

**A.     Weight Afforded to J. Craig Rylands, M.D.**

The Plaintiff first argues that the ALJ erred by not affording the proper weight to the opinions of J. Craig Rylands, M.D. Plaintiff cites the Court to a Treating Relationship Inquiry completed by Dr. Rylands completed July 18, 2008, wherein Dr. Rylands indicated that the Plaintiff would not be able to complete a full work-week because of pain. [Tr. 305].

Dr. Rylands identified three physical impairments from which the Plaintiff suffers: (1) "severe loss of function in [his right] hand," (2) "severe thoracic spine pain from compression fractures," and (3) a "ruptured disc in [his] low back." [Tr. 305]. Dr. Rylands opined that the Plaintiff could not continuously sit, stand, or walk for any time during an eight-hour day, [Tr. 305], and he concluded that the Plaintiff could only occasionally lift 0-10 pounds, [Tr. 306]. Dr. Rylands found the Plaintiff could never bend, stoop, crawl, reach above his shoulders, or use his right hand for fine manipulation. [Tr. 306]. He also opined that the Plaintiff required daily bedrest for 1-2 hours 2-3 times per day. [Tr. 306].

Dr. Rylands opined that the Plaintiff would have problems with stamina and endurance and would have severe pain. [Tr. 307]. He also found that the Plaintiff's concentration would likely be affected by the severity of his pain. [Tr. 307]. Dr. Rylands concluded, "He is truly disabled – his hand has bad function, permanently limited and he is in pain from compression fracture and a

7

ruptured disc." [Tr. 309].

The Plaintiff maintains that, pursuant to the Treating Physician Rule, the ALJ should have given greater weight to Dr. Rylands's statements in the Treating Physician Inquiry.

Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it must be given controlling weight. 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). But where an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision. 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (1996). Nonetheless, the ultimate decision of disability rests with the ALJ. <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984).

8

With this law in mind, the Court turns to Dr. Rylands's assessment. The ALJ discussed the medical tests ordered by Dr. Rylands and his medical findings as follows:

> [I]mages of the claimant's lumbar spine taken about three months after his motor vehicle accident were negative. They showed no acute compression fracture or malalignment, normal sacroiliac (SI) joints, well preserved disc heights, and no significant facet athropathy. Additionally, Dr. Rylands noted on February 22, 2008 that the claimant's lumbar spine looked good.
>
> Images of the claimant's thoracic spine taken about three months after his motor vehicle accident showed T8 and T7 anterior wedge compression deformities, with the greatest at T8. However, the age of these deformities was uncertain. A computed tomography (CT) scan of the claimant's thoracic spine, dated April 15, 2008, showed only mild compression deformities at T7 and T8 slightly greater on the right, mild degenerative end plate spurring on the right at both levels, and multi level Schmorl's nodules throughout the thoracic spine.
>
> In addition to the medical evidence of record described above, treatment notes of Dr. Rylands from December 2008 and July 2009 show that the claimant had a normal gait and station and positive straight leg raising at 90 degrees in a lying position. Additionally, less than two months after his car accident, the claimant said his activities of daily living included walking around his yard and sitting on his porch. The undersigned also notes that the claimant likely did not obtain maximum improvement from his injuries when he tried, unsuccessfully, to return to light duty as a warehouse manager approximately two months after his motor vehicle accident.

[Tr. 42]. The ALJ further reviewed Dr. Rylands's findings and concluded that Dr. Rylands opinions were entitled to little weight because they opined upon the disability determination that is ultimately reserved for the Commissioner, see Soc. Sec. Rul. 96–5p. [Tr. 44].

The Court, initially, finds that Dr. Rylands was a treating physician, who had an ongoing and long-term treatment relationship with the Plaintiff. Further, the Court finds that the ALJ did not afford controlling weight to Dr. Rylands's opinions. Instead, he gave great weight to the opinion of

9

a non-examining physician, Saul A. Juliao, M.D., who found that the Plaintiff could perform the light range of work with occasional balancing, stooping, kneeling, crouching, crawling, and climbing of ramps and stairs, with no climbing of ladders, ropes, or scaffolds, limited handling and fingering, and no concentrated exposure to vibrations. [Tr. 43, 292-299]. Consistent with Dr. Juliao's findings, the ALJ ultimately concluded that the Plaintiff had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), which includes lifting up to 20 pounds occasionally and up to 10 pounds frequently.

The Court finds that the ALJ did not afford controlling weight to Dr. Rylands's findings and opinions because he found that the Plaintiff retained a residual functional capacity beyond that observed by Dr. Rylands. Thus, the Court must determine whether Dr. Rylands's opinion was well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record and whether the ALJ gave good reasons for not affording this opinion controlling weight.

Initially, the Court finds that Dr. Rylands's opinion was well-supported by medically acceptable clinical and laboratory diagnostic techniques. Dr. Rylands treated the Plaintiff since at least August 2004. [See Tr. 274]. Dr. Rylands saw the Plaintiff following his accident, and as the Commissioner notes, Dr. Rylands recognized that the Plaintiff was seeking specialized care from Richard Smith, M.D., in regards to injuries to his hands and possible surgery on his hand. [Tr. 259]. On April 15, 2008, Daniel W. Walsh, M.D., on the referral of Dr. Rylands, completed a CT scan of the Plaintiff's thoracic spine, and concluded, "Multi level Schmorl's nodes throughout the thoracic spine. There are mild compression deformities at T7 and T8 slightly greater at T8 on the right. Mild degenerative end plate spurring on the right at both levels. Probable chronic findings." [Tr. 302].

These findings from the examination along with Dr. Walsh's conclusions were forwarded to Dr. Rylands for his review.

At a check-up visit on July 14, 2008, Dr. Rylands, following a physical examination of the Plaintiff explained, "He has terrible function of [his hand] and he cannot do any work. He also has chronic pain in his thoracic and lumbar spine, and also in his legs." [Tr. 301]. Dr. Rylands noted that the Plaintiff had brought "a form for me to fill out about his capabilities in light of his underlying conditions and we will fill this out as discussed." [Tr. 301]. Thus, the Treating Relationship Inquiry was clearly completed by Dr. Rylands within days of his physical examination of the Plaintiff. Based upon the foregoing and the medical records from Dr. Rylands's treatment of the Plaintiff generally, the Court finds that Dr. Rylands's opinions were well-supported.

Further, the Court finds that Dr. Rylands's opinions as to the Plaintiff's physical capacity are not inconsistent with the other substantial evidence in the case record. The Commissioner directs the Court to the findings of Dr. Smith, the Plaintiff's orthopaedic surgeon, but the Court has reviewed the notes from the Plaintiff's visits with Dr. Smith and finds that Dr. Smith's findings are not inconsistent with Dr. Rylands's findings. [Tr. 248, 285-91]. Though Dr. Smith indicated improvement in the Plaintiff's hand post-surgery, Dr. Smith indicated at the Plaintiff's final visit that the Plaintiff continued to experience pain in his hand, continued to have overlap, and increased ulnar deviation. [Tr. 288]. Dr. Smith also discussed finger amputation as a treatment option at this final visit. [Tr. 288]. The Commissioner has not directed the Court to, nor has the Court found, any inconsistency between Dr. Smith's findings and Dr. Rylands's finding regarding the Plaintiff's physical limitations– specifically, as they relate to Plaintiff's right-hand impairment and related activities such as Plaintiff's capacity for lifting.

Dr. Rylands was the only examining physician in the record who evaluated the Plaintiff's physical limitations in this case. Dr. Rylands's findings vary from those made by Dr. Juliao [Tr. 292-99]. Dr. Juliao found that the Plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds and did not find the postural limitations that Dr. Rylands found [Tr. 293], but Dr. Juliao had not examined the Plaintiff. Dr. Hand, a second non-examining physician, made similar findings. [Tr. 250].

The Court has reviewed the record and considered the findings of Dr. Smith and the non-examining physicians, and the Court finds that Dr. Rylands's opinion is not inconsistent with the record as a whole.

Turning to the "good reasons" requirement, the Court finds, first, that the ALJ was correct in his observation that certain opinions supplied by Dr. Rylands infringed upon the disability determination, which is reserved for the Commissioner. He gave good reasons for affording little weight to these findings. Dr. Rylands's observations that the Plaintiff could not complete a work-week, [Tr. 305], and that the Plaintiff is "truly disabled," [Tr. 309], are not entitled to controlling weight because they speak to disability, a legal determination reserved to the Commissioner. The ALJ did not err in determining that these statements should not be afforded controlling weight and he supplied sufficient explanation for doing so.

The Court has reviewed the ALJ's discussion of Dr. Rylands's findings regarding the Plaintiff's residual functional capacity, and the Court finds that the ALJ did not supply "good reasons" for discounting these findings. The ALJ's citations to normal gait and station and positive straight leg raising, coupled with the Plaintiff's ability to sit on the porch and his ability to take trash to the dump once a week, [see Tr. 42, 45], and Dr. Juliao's opinions [Tr. 43], do not undermine Dr.

12

Rylands's findings as to the Plaintiff's physical limitations.

The Commissioner has argued that Dr. Rylands's findings should not be given treating weight because Dr. Smith treated the Plaintiff's hand injury. Dr. Rylands, himself, noted that Dr. Smith was treating the Plaintiff's hand injury, but this fact does not undermine Dr. Rylands's findings and observations. Dr. Rylands is a treating medical doctor who observed the Plaintiffs' physical abilities, and his observations were entitled to controlling weight absent the ALJ supplying "good reasons" for not doing so.

In discussing his decision to discount Dr. Rylands's observations, the ALJ stated, "[A]s recently as July 15, 2009, Dr. Rylands has opined that the claimant's hand is functional. Significantly, the record shows that Dr. Smith, a board certified orthopedic surgeon, has not concluded that the claimant is disabled because function in his right hand is permanently limited." [Tr. 45]. This statement seems at least inaccurate, and the Court would note that on July 15, 2009, Dr. Rylands observed, "Physical exam shows that his right hand is functional, but not normal.,"[Tr. 311], a finding different than simply "functional."

Accordingly, the Court finds that the ALJ did not supply good reasons for discounting Dr. Rylands's specific findings about the Plaintiff's physical limitations, as contained in the Treating Relationship Inquiry, [Tr. 305-09], and therefore, the undersigned will recommend remand for further consideration of this evidence consistent with this opinion.

**B.      Necessity of an Evaluation by a Mental Health Professional**

The Plaintiff also argues that the ALJ erred by failing to obtain the opinion of a mental health expert. Specifically, the Plaintiff argues, "An ALJ has a duty to obtain the assistance of a mental health expert if the claimant has a mental impairment and the record does not include a psychological

13

assessment. [Doc. 13 at 8]. In support of this position, the Plaintiff cites the Court to DeVoll v. Commissioner of Social Security, 234 F.3d 1267 (Table) (6th Cir. Oct. 6, 2000), and Marcum v. Commissioner of Social Security, 205 F.3d 1341 (Table) (6th Cir. Jan. 18, 2000).

The Commissioner responds that the Plaintiff has not directed the Court to any evidence that would undermine the ALJ's mental capacity finding, but he has instead argued that the Commissioner should have obtained additional evidence. [Doc. 17 at 12]. The Commissioner maintains that ordering the ALJ to obtain additional evidence would be a futile exercise, [Doc. 17 at 12], and the Commissioner maintains that the cases cited by the Plaintiff do not require the ALJ to obtain the opinion of a mental health professional. [Doc. 17 at 13].

The Court finds that the ALJ was not required to obtain an additional evaluation and did not err by failing to do so.

In DeVoll v. Commissioner of Social Security, 234 F.3d 1267 (Table) (6th Cir. Oct. 6, 2000), the Court of Appeals issued an unreported opinion stating that an ALJ *may* "obtain a medical advisor to assist in determining the existence and onset of a disability" and that in a case where there is evidence indicating a mental disorder the ALJ should make a reasonable effort to obtain an assessment from a psychologist or psychiatrist. Id. at *4.

Similarly, in Marcum v. Commissioner of Social Security, 205 F.3d 1341 (Table) (6th Cir. Jan. 18, 2000), another unreported opinion, the Court of Appeals explained that an obligation to consult with mental health experts arose "only 'if the claimant brings forth sufficient evidence to raise an inference that he suffers from a mental impairment.'" Id. at *4 (quoting Owen v. Comm'r of Soc. Sec., 1997 WL 251918, at *4 (6th Cir. May 13, 1997)). In Marcum, the court concluded that a letter from the plaintiff's treating physician suggesting that it was "quite possible" that the plaintiff

14

had some form of depression was not sufficient to raise an inference requiring the ALJ to obtain a mental health consultation. Id. at *4.

In his brief, the Plaintiff does not cite the Court to any specific evidence of mental impairment. Nonetheless, the Court has reviewed the record and finds that the only evidence in the record indicating a possible mental impairment is the Plaintiff's complaint to Dr. Rylands that his memory is impaired on July 14, 2008, and Dr. Rylands's notation of depression and anxiety on a follow-up visit on July 15, 2009. [Tr. 311-12]. However, Dr. Rylands's depression and anxiety assessment is not accompanied by any subjective or objective observations or findings that would indicate that the Plaintiff was depressed or anxious. This evidence, like the evidence in Marcum, is not sufficient to raise an inference requiring the ALJ to obtain a mental health consultation.

Accordingly, the Court finds that the Plaintiff's allegation that the ALJ erred by not ordering a mental health consultation or evaluation is not well-taken.

**C.     The ALJ's Credibility Determination**

Finally, the Plaintiff argues that the ALJ erred by discounting the Plaintiff's complaints of pain. [Doc. 13 at 8]. The Plaintiff contends that the ALJ erred by relying upon the Plaintiff's testimony that he walked around his yard and sat on his porch, while ignoring the fact that his testimony demonstrated an overall lack of activity.

The Commissioner responds that the ALJ did not focus on only two activities. [Doc. 17 at 13]. The Commissioner maintains that the ALJ referred to the Pain Questionnaire completed by the Plaintiff in January 2008, in which the Plaintiff stated that he could "walk around yard, sit on porch, watch TV, talk to wife and kids." [Tr. 188]. The Commissioner also notes that the Plaintiff testified that he could play board games, help his children with home work, and go to the dump with the

15

assistance of his sixteen-year-old son. [Tr. 67].

While the ALJ may consider household and social activities in evaluating complaints of disabling pain, see Blacha v. Sec'y of Health and Human Servs., 927 F.2d 228, 231 (6th Cir.1990), the physical capabilities of claimants in such cases appear to exceed those in this case. See e.g., Perschka v. Comm'r of Soc. Sec., 411 Fed. App'x 781, 787 (6th Cir 2010) (noting claimant could "clean, shop, sew, cook, socialize, bowl, and walk several miles a day"); Powers v. Comm'r of Soc. Sec., 195 Fed. App'x 407, 413 (6th Cir. 2006) (finding "daily activities of crocheting, grocery-shopping, cooking family meals, visiting with her sister-in-law, hanging laundry, attending church, and outdoor walking for roughly a mile and a half, belie any subjective claims of pain").

The court is to "accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying." Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 476 (6th Cir. 2003). The court's determination is limited to considering whether the ALJ's reasons for discounting the claimant's credibility are reasonable and supported by substantial evidence. Id.

In this case, the Court finds that the ALJ's reasons for discounting the Plaintiff's subjective complaints and his credibility were not reasonable and were not supported by substantial evidence. The activities cited by the ALJ were not inconsistent with the Plaintiff's complaints of pain or the impairments supported by the medical evidence in the record. The ability to complete very limited tasks – *i.e.* to walk around his yard, sit on his porch, watch television, and speak with his family – does not undermine the Plaintiff's credibility or his contention that he cannot perform the work required in jobs available in the national economy. Many persons, who are unable to work, are able to walk, sit, watch, and speak, albeit to a degree more limited than required for employment.

16

Moreover, the Plaintiff's ability to play board games and accompany his son to the dump do not undermine his credibility.

Accordingly, the Court finds that the Plaintiff's allegation of error based upon the ALJ's credibility determination is well-taken, and the undersigned will recommend remanding this case for consideration of the Plaintiff's credibility consistent with this opinion.

## V.  CONCLUSION

Based upon the foregoing, the Court finds that the Plaintiff's allegations that the ALJ erred in his treatment of the physical limitation findings made by Dr. Rylands and his credibility determination is well-taken. The Court finds that all other allegations of error are not well-taken. Therefore, it is hereby **RECOMMENDED**[1] that Plaintiff's Motion For Summary Judgment **[Doc. 12]** be **GRANTED IN PART** and **DENIED IN PART** and that the Commissioner's Motion for Summary Judgment **[Doc. 16]** be **GRANTED IN PART** and **DENIED IN PART**.

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).

The undersigned **RECOMMENDS** that this case be **REMANDED** to the Commissioner for consideration of Dr. Rylands's findings and the Plaintiff's credibility consistent with the Court's analysis above.

Respectfully submitted,

s/ H. Bruce Guyton
United States Magistrate Judge